# Exhibit A

MICHAEL J. CURLS (SBN 159651)
NICHELLE D. JORDAN (SBN 186308)
**LAW OFFICE OF MICHAEL J. CURLS**
4340 Leimert Blvd., Suite 200
Los Angeles, CA 90008
Telephone:    (323) 293-2314
Facsimile:    (323) 293-2350

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/22/2023 10:55 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Simon, Deputy Clerk

Attorneys for Plaintiffs THE ESTATE OF CMW, SYDNEY WATKINS and LISA LEWIS

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES, NORTH DISTRICT

THE ESTATE OF "CMW", a deceased minor, SYDNEY WATKINS, individually, as successor in interest to "CMW", and LISA LEWIS

　　　　　　Plaintiffs,

　　vs.

COUNTY OF LOS ANGLES, LASHAUNA CANDLER GRIFFIN, WENDY GARCIA, BILL THOMAS and DOES 1 THROUGH 25, INCLUSIVE,

　　　　　　Defendants

Case No.:  **23AVCV01485**

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR**

1) Wrongful Death
2) Negligence
3) Negligent Hiring, Training and Supervision;
4) Violation of Civil Rights Pursuant to Monell
5) Violation/Deprivation of Civil Rights Under Color of Law Pursuant to the 14th Amendment to the United States Constitution (42 USC § 1983)

FSC: 2/19/2025
TRIAL: 2/21/2025
OSC: 12/22/2026

DEMAND FOR JURY TRIAL

PLAINTIFFS THE ESTATE OF CMW, SYDNEY WATKINS AND LISA LEWIS allege:

## **VENUE AND JURISDICTION**

1.　Venue is proper in the Superior Court of the State of California, for the County of Los Angeles, North District, in that the underlying wrongdoing, acts, omissions, injuries and related facts and circumstances upon which the present action is based occurred in the County of Los Angeles, California, within the judicial boundaries of the North District of this Superior Court. The Superior Court has jurisdiction over the present matter because, as described herein, the nature of the claims and amounts in controversy meet the requirements for unlimited damages jurisdiction.

1

**COMPLAINT**

2.  Plaintiffs have exhausted their administrative remedies by filing a claim with the COUNTY OF LOS ANGELES.  Plaintiffs' claim was rejected on or about June 26, 2023.

## PARTIES

3.  Plaintiff SYDNEY WATKINS is the surviving mother of deceased minor "CMW" ("CMW"), and is a resident of the State of California, and presently resides in Los Angeles County.  Plaintiff is pursuing the claims averred herein as an individual and on behalf of CMW as his personal representative and successor in interest in accordance with California Code of Civil Procedure §377.32 and 42 U.S.C. §§1983, 1985, 1986 and 1988 to seek redress for Defendants' violations of hers and CMW's rights under the United States Constitution.

4.  Plaintiff LISA LEWIS is the grandmother of CMW, and a resident of the state of Georgia.  Plaintiff LISA LEWIS is pursuing the claims averred herein to seek redress for Defendant COUNTY OF LOS ANGELES' violations of her rights under the fourteenth amendment of the United States Constitution.

5.  Defendant COUNTY OF LOS ANGELES ("COLA") is a public entity organized, existing, and conducting business under the laws of the County of Los Angeles and the State of California.  COLA is the employer and principal of all individuals employed by the Los Angeles County Department of Children and Family Services ("DCFS") that came into contact with decedent CMW.  The instant case demonstrates the custom and practice of deliberate indifference towards children by the agency.

6.  Defendant LASHAUNA CANDLER GRIFFIN is an individual residing in the State of California, County of Los Angeles.   Defendant LASHAUNA CANDLER GRIFFIN was the foster mother to the infant minor at the time of his death.

7.  Defendant WENDY GARCIA is a Social Worker for the County of Los Angeles Department of Children and Family Services.  Plaintiff alleges on information and belief that WENDY GARCIA resides in the State of California, County of Los Angeles.

8.  Defendant BILL THOMAS is a Social Worker for the County of Los Angeles Department of Children and Family Services.  Plaintiff alleges on information and belief that BILL THOMAS resides in the State of California, County of Los Angeles.

2

**COMPLAINT**

9. Plaintiffs are unaware of the true names and capacities of those Defendants sued herein as DOE Defendants. Plaintiffs will amend this complaint to allege said Defendants' true names and capacities when that information becomes known to them. Plaintiffs are informed, believe, and thereon allege that these DOE Defendants are legally responsible and liable for the incident, injuries and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, willful or wanton misconduct in creating and otherwise causing the incidents, conditions and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiffs will seek leave to amend this complaint to set forth said true names and identities of the unknown named DOE Defendants when they are ascertained.

10. Each of the named and unknown individual Defendants sued herein are sued both in their individual and personal capacity, as well as in their official capacity.

11. Defendants and each of them at all times herein were the agents and employees of their co-defendants and in doing these things hereafter alleged were acting within the course and scope of their employment and agency and with permission and consent of their co-defendants and employers.

12. At all relevant times mentioned herein, Defendants aided and abetted the acts and omissions of the other Defendants in proximately causing the damages alleged herein.

13. Defendants, and each of them, acting in concert together, removed CMW from his family home, interfered with LISA LEWIS' efforts to provide kinship care to CMW and instead placed CMW into a COLA created danger wherein LASHAUNA CANDLER GRIFFIN was allowed to negligently, intentionally or act with reckless disregard to cause CMW's death.

## FACTS COMMON TO ALL COUNTS

14. Decedent CMW ("Decedent" or "CMW")) was the child of Sydney Watkins and grandchild of Lisa Lewis. At the time of her death, Decedent was placed by Defendants COLA,

WENDY GARCIA ("GARCIA") and BILLTHOMAS into the care of Defendant LASHAUANA CANDLER GRIFFIN ("CANDLER GRIFFIN").

15.     Decedent CMW was born to Plaintiff SYDNEY WATKINS ("WATKINS") on November 12, 2022. Almost immediately after his birth, Defendants took CMW from his mother and placed him into foster care. Plaintiffs allege on information and belief that Defendants made no efforts to locate relatives who could assume care for CMW in lieu of foster care. CMW was placed in CANDLER GRIFFIN'S home on or about November 28, 2022.

16.     Plaintiff LISA LEWIS ("LEWIS")  is the grandmother to Decedent CMW and the mother of Plaintiff SYDNEY WATKINS.  When LEWIS learned that CMW was placed into foster care, she immediately tried to get the baby and provide kinship care to CMW in lieu of foster care.  However, her attempts were thwarted by COLA who instead knowingly placed CMW in a position of peril by placing him with CANDLER GRIFFIN.

17.     At the time that the Defendants placed CMW in CANDLER GRIFFIN'S care, they knew that CANDLER GRIFFIN had a case with COLA DCFS for allegations of physician abuse against her biological child.

18.     Prior to placing CMW with CANDLER GRIFFIN, Defendants COLA, GARCIA and THOMAS knew or should have known that CANDLER GRIFFIN had a criminal record which included a violent felony.

19.     Nevertheless, Defendants COLA, GARCIA and THOMAS intentionally, negligently and/or recklessly placed CMW with Defendant CANDLER GRIFFIN knowing that Defendant CANDLER GRIFFIN was not fit to provide a safe and secure environment for the infant.

20.     On the night of January 11, 2023, CANDLER GRIFFIN put the two (2) month old infant in a bassinet in the living room alone and unsupervised. CANDLER GRIFFIN did not check on the infant or otherwise monitor the child in any way during the night.  When CANDLER GRIFFIN encountered the infant the next morning he was lying on his back, stiff and not breathing.

21.     Plaintiffs allege on information and belief that other minors housed in the CANDLER GRIFFIN home exhibited signs of physical abuse; and further allege that the Defendants knew of or should have known of the abuse.

22.     However, because the Defendants failed to abide by their mandatory duties as set forth below, the children remained in harm's way.

23.     The COLA DCFS, the Lancaster/Palmdale DCFS office in particular, has a custom and practice of egregious behavior that has led to the negligent and/or reckless death and murders of children.

24.     For example, in 2013 Gabriel Fernandez was tortured and murdered by his mother and boyfriend following countless red flags of physical and sexual abuse that COLA DCFS workers failed to properly respond to.  In 2018, Anthony Avalos was tortured and murdered by his mother and her boyfriend following 13 referrals to COLA DCFS and countless red flags which were ignored by COLA DCFS.

25.     On or about April 18, 2014, the Los Angeles County Board of Supervisors created the Blue Ribbon Commission Report in which "The Commission unanimously concluded that a State of Emergency exists, which requires a fundamental transformation of the current child protection system."  The commission provided recommendations to institute a complete systematic change to child protection services.  Despite the specific recommendations, COLA DCFS failed to make changes to protect the children that found themselves in the system and child fatalities continued to occur.

26.     As a result of the above acts, omissions, neglect and reckless disregard of the Defendants and each of them, CMW died.

27.     Plaintiffs WATKINS and LEWIS were denied the opportunity to reunite with CMW because exactly two months after his placement with Defendant LASHAUNNA CANDLER GRIFFIN, CMW died.

28.     There is a policy and practice within the COUNTY OF LOS ANGELES DEPARTMENT OF CHILD FAMILY SERVICES whereby children are removed from their families and placed in harm's way; Where social workers are overworked, and denied adequate

5

**COMPLAINT**

training and resources; Where red flags of abuse and neglect are often ignored and overlooked; and Where COLA employees conspire with each other and third parties to cover allegations of abuse and neglect in additional to other egregious conduct.

29.     The COUNTY OF LOS ANGELES has known about these deficient policies and practices for years yet continue to ignore these bad acts while children continue to taken from their biological families and placed in dangerous conditions without advocacy or protection.

30.     As a direct and proximate result of Defendants' conduct, as alleged above, Plaintiff, LISA LEWIS, has been deprived of the life-long love, companionship, comfort, society, and care of CMW, and will be deprived for the remainder of her natural life.

31.     Plaintiffs the ESTATE OF CMW and SYDNEY WATKINS are claiming wrongful death damages under the Fourteenth Amendment, and also under their state law claims for negligence.

## FIRST CAUSE OF ACTION

### (For Wrongful Death)

### (By Plaintiff SYDNEY WATKINS Against All Defendants)

32.     Plaintiffs reallege and reincorporate each and every allegation and averment contained herein above as though fully set forth and brought in this cause of action.

33.     Defendants and each of them owed a duty of care to CMW and WATKINS in the evaluation and assessment of dangerous conditions of the CANDLER GRIFFIN home and care, as well as the assessment of the best interest of the deceased infant CMW.

34.     Defendants were also under a duty to use reasonable care in the evaluation and assessment of dangerous conditions of fosters families for the deceased infant CMW.

35.     Defendants and each of them negligently removed CMW from the care of their biological family, so as to directly and proximately cause the unsafe conditions leading to CMW's death.

36.     Defendants owed a duty to decedent CMW under the accepted standards of care required of welfare workers, the Welfare and Institutions Code sections and/or Department of

Social Services ("DSS") regulations set forth below and Child Welfare Code as set forth specifically herein.

37.     Defendants further had a duty to decedent as "mandated reporters" under Penal Code §§ 11165.7 (a)(15) and (18).

38.     Defendants knew or should have known of the abuse and misconduct occurring in the home of CANDLER GRIFFIN, yet failed to take appropriate actions to investigate and stop the abuse and breached the duty of care owed to decedent CMW.  Defendants failed to properly and/or adequately investigate the complaints and failed to take appropriate action as mandated by the Welfare and Institutions Code sections and/or Department of Social Services ("DSS") regulations set forth below.

39.     Prior to separating the deceased infant CMW from his biological family and placing him into CANDLER GRIFFIN'S home, Defendants knew that CANDLER GRIFFIN'S biological child was removed from her home by COLA DCFS for physical abuse allegations and that there had been an open case against CANDLER GRIFFIN for the suspected abuse.

40.     Prior to placing CMW with CANDLER GRIFFIN, Defendants COLA, GARCIA and THOMAS knew or should have known that CANDLER GRIFFIN had a criminal record which included a violent felony.

41.     The Defendants had knowledge of the above-referenced conduct yet breached their mandatory duty to provide accurate information to the dependency court.

42.     Welfare and Institutions Code Section 16501(f) imposes a mandatory duty on Defendants to determine the necessity for providing initial intake services and crisis intervention to maintain the child safely in his home or to protect the safety of the child pursuant to sections 11164 and 11166 of California Penal Code. Section 16501(f) states, "County welfare departments shall respond to any report of imminent danger of a child immediately all other reports within 10 days." Section 16504, subsection (a), of the California Welfare and Institutions Code mandates an in-person response in accord with the Department of Social Services Regulations: "An immediate in-person response shall be made by a county child welfare services department social worker in emergency situations in accordance with the regulations of the

7

**COMPLAINT**

department." Decedent was in imminent danger and there was no immediate response from social workers.

43.     Pursuant to its regulatory authority, the California Department of Social Services promulgated extensive regulations that remove nearly all social worker discretion in whether and how to respond to reports of child abuse.

    a) **Required Response.** Regulation 31-101.1 requires the county to respond to all referrals for service which allege that a child is endangered by abuse, neglect, or exploitation.

    b) **Social Worker Qualifications.** Regulation 31-101.2 mandates that the social worker responding to a referral "shall be skilled in emergency response."

    c) **Emergency Response Protocol or In-Person Investigation.** Regulation 31-101.3 requires the responding social worker to complete an "Emergency Response Protocol", as described in Section 31-105, conduct an in-person investigation within 10 calendar days from the date the referral was received, as described in Section 31-120.

    d) **Deadline to Determine Services Post-Investigation.** Regulation 31-101.5 requires that, within 30 calendar days of the initial removal of the child or the in-person investigation, or by the date of the dispositional hearing, whichever comes first, the social worker shall make a determination of whether child welfare services are necessary and, in the case of non-Indian children, either: (1) complete a case plan and begin implementation of the case plan in accordance with the time frames and schedules specified in Chapter 31-200; or (2) close the referral/case, as appropriate.

    e) **Emergency Response Protocol.** Regulation 31-105 defines explicit information that the social worker must gather to complete the Emergency Response Protocol. Furthermore, the social worker shall record all available and appropriate information on the Emergency Response Protocol form SOC 423 (10/92), or an approved substitute. Pursuant to Regulation 31-105, social workers must gather information, including information regarding the reporter, each adult and minor in the child's

8

**COMPLAINT**

household, the alleged perpetrator, records reviewed, collateral contacts, the alleged incident, including specified risk factors (severity, frequency, location and description of injury, history of abuse/neglect/exploitation, age, vulnerability, behavior, interaction with caretakers/siblings/peers, caretaker characteristics, family factors), and information necessary to determine whether to conduct an in-person investigation is necessary shall include, but not be limited to, consideration of the following factors:

1. The ability to locate the child alleged to be abused and/or the family.

2. The existence of an open case and the problem described in the allegation is being adequately addressed.

3. The allegation meets one or more of the definitions of child abuse, exploitation or neglect contained in Sections 31-002(c)(7), 31-002(e)(9), or 31-002(n)(1).

4. The alleged perpetrator is a caretaker of the child or the caretaker was negligent in allowing, or unable or unwilling to prevent, the alleged perpetrator access to the child.

5. The allegation includes specific acts and/or behavioral indicators which are suggestive of abuse, neglect, or exploitation.

6. There is additional information from collateral contacts or records review which invalidates the reported allegation.

7. There are previously investigated unsubstantiated or unfounded reports from the same reporter with no new allegations or risk factors.

f) **Mandatory Immediate In-Person Investigation.** Regulation 31-115.1 requires a social worker to conduct an "immediate" in person investigation when either: (1) "The emergency response protocol indicates the existence of a situation in which imminent danger to a child, such as physical pain, injury, disability, severe emotional

**COMPLAINT**

harm or death, is likely." (2) "The law enforcement agency making the referral states that the child is at immediate risk of abuse, neglect or exploitation. (3) "The social worker determines that the child referred by a law enforcement agency is in immediate risk of abuse, neglect or exploitation."

g) **Mandatory 10-Day In-Person Investigation.** Regulation 31-120 requires a social worker to conduct an in-person investigation of the allegation of abuse, neglect or exploitation within 10 calendar days after receipt of a referral when: (1) "The emergency response protocol indicates that an in-person investigation is appropriate and the social worker has determined that an in-person immediate investigation is not appropriate." (2) "The law enforcement agency making the referral does not state that the child is at immediate risk of abuse, neglect or exploitation and the social worker determines that an in-person investigation is not appropriate."

h) **Investigation Mandatory Determination.** Regulation 31-125 requires a social worker investigating a referral to "determine the potential for or the existence of any condition(s) which places the child or other child in the family or household, at risk and in need of services and which would cause the child to be a person…" abused or neglected under California Welfare and Institutions Code section 300, subsection (a) through (j).

i) **Investigation Protocol Requirements.** Regulation 31-125.2 requires the social worker to have in-person contact with all of the children alleged to be abused, neglected or exploited, and at least one adult who has information regarding the allegations. Where the foregoing does not lead to determination that the referral is "unfounded", the social worker must: (1) conduct an in-person investigation with all children present and parents with access to the children; and (2) make necessary collateral contacts with each person having knowledge of the condition of each child that is the subject of the allegation.

j) **Reports to Law Enforcement/District Attorney.** California Penal Code section 11166 requires a welfare department to immediately, or as soon as practicably

10

**COMPLAINT**

possible, to report by telephone, fax, or electronic transmission to law enforcement and the district attorney's office every known or suspected instance of child abuse or neglect. Where the initial report was made by telephone, the welfare department must fax or electronically transmit, within 36 hours, a written report to law enforcement and the district attorney's office.

44.     As set forth above, Defendants violated their mandatory duties to: (1) respond to all referrals for service which allege that a child is endangered by abuse, neglect, or exploitation as set forth above; (2) ensure that the social worker responding to a referral has the requisite skill in emergency response; (3) complete an emergency response protocol or an in-person investigation in response to each referral as set forth above; (4) follow the emergency response protocol and obtain all information delineated in Regulation 31-105 set forth above; (5) consider all criterion delineated in Regulation 31-105 for the evaluation of whether an in-person investigation is required; (6) conduct an in-person investigation to make a determination as required under Regulation 31-125; (7) complete an in-person investigation according to the protocol required under Regulation 31-125; (8) failure to timely make a determination of whether a child welfare services are required; and (9) failure to report to law enforcement and the district attorney's office. Defendants' violations of their mandatory duties was the proximate cause of Decedent CMW's death, resulting in Plaintiff's injuries and damages as alleged above.

45.     Defendants owed a duty to exercise reasonable care to avoid injuring Decedent CMW or otherwise protect Decedent from the harm caused by CANDLER GRIFFIN.

46.     Defendants negligently, recklessly, willfully, intentionally, wantonly, and deliberately failed to exercise reasonable care to protect Decedent. Defendants further negligently failed to identify the abuse; document; report to superiors; properly assess the level of risk to Decedent; conduct an investigation pursuant to regulations set forth above; implement and monitor compliance with policies and procedures regarding the foregoing; and/or taking action to prevent the abuse and/or neglect of Decedent, as described above.

47.     As "mandated reporters" under Penal Code sections 11165.7(a)(15) and (18), Defendants failed to report suspected child abuse and/or neglect of Decedent to appropriate

authorities and failed to make initial reports or follow up reports within 36 hours of receiving said reports of abuse and/or neglect in the CANDLER GRIFFIN home as mandated by Penal Code sections 11165.9 and 11166(a).

48.     Defendant negligently delivered child protective services of Decedent by failing to properly conduct an assessment and develop a case plan as mandated by DSS Regulations 31-201, 31-205, 31-206, and/or Welfare and Institutions Code section 16501.1(d).

49.     Defendants failed to conduct a basic evaluation of risks to determine whether an emergency situation existed as mandated by Welfare and Institutions Code section 16504 and/or DSS Regulations at 31-101, 31-105, 31-110, 31-115, 31-120, and/or 31-128.

50.     Defendants failed to control the conduct of CANDLER GRIFFIN, and/or otherwise protect minor Decedent as mandated by Welfare and Institutions Code sections 16504(a), 16501(d), and/or 16501(f). The assigned social workers ignored red flags that showed CANDLER GRIFFIN was not capable of protecting or caring for Decedent.

51.     Additionally, under California Evidence Code section 669, the negligence of Defendants, and their employees or agents, may be presumed for the reason that:

    a) Defendants, and each of them, violated the child protection statutes, placing Decedent in harm's way pursuant to California Penal Code section 273(a) (Endangerment) and failing to investigate reports of child abuse;

    b) The violations proximately caused injury to Decedent;

    c) The injuries to Decedent were occurrences of the nature which the statutes are designed to prevent; and

    d) Decedent was a member of the class of persons for whose protection these statutes were adopted.

52.     Defendant CANDLER GRIFFIN acted negligently and with willful disregard towards Plaintiffs. CANDLER GRIFFIN had a duty of care that it breached which was the actual and proximate cause of Plaintiffs' injuries.

53.     In doing the acts and omissions alleged herein, CANDLER GRIFIN engaged in a course of conduct that was grossly negligent, extreme and outrageous.  CANDLER GRIFFIN

acted in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to CMW.

54.     Due to Defendants' actions resulting in the wrongful death of CMW, Plaintiffs hereby seek recovery of other relief as may be just and provided under the Cal. Cod Civ. Proc.§ 377.61.

55.     Due to Defendants' actions resulting in the wrongful death of CMW,  Plaintiff is the rightful heir to CMW and is entitled to bring an action for the death of CMW pursuant to § 377.60 of the California Code of Civil Procedure as successor in interest to CMW under Cal. Code of Civ. Proc. 377.30.

## SECOND CAUSE OF ACTION

### (Survival Action by the ESTATE OF CMW,

### Against All Defendants for Negligence)

56.     Plaintiffs reallege and reincorporate each and every allegation and averment contained herein above as though fully set forth and brought in this cause of action.

57.     Defendants owed a duty to decedent CMW under the accepted standards of care required of welfare workers, the Welfare and Institutions Code sections and/or Department of Social Services ("DSS") regulations set fort below and Child Welfare code as set forth specifically herein.

58.     Defendants further had a duty to decedent as "mandated reporters" under Penal Code §§ 11165.7 (a)(15) and (18).

59.     Defendants knew or should have known of the abuse and misconduct occurring in the home of CANDLER GRIFFIN, yet failed to take appropriate actions to investigate and stop the abuse and breached the duty of care owed to decedent CMW.  Defendants failed to properly and/or adequately investigate the complaints and failed to take appropriate action as mandated by the Welfare and Institutions Code sections and/or Department of Social Services ("DSS") regulations set forth below.

60.     Prior to separating the deceased infant CMW from his biological family and placing him into CANDLER GRIFFIN'S home, Defendants knew that CANDLER GRIFFIN'S

biological child was removed from her home by COLA DCFS for physical abuse allegations and that a case had been opened against CANDLER GRIFFIN prior to CMW'S placement.

61.     Prior to separating the deceased infant CMW from his biological family and placing him into CANDLER GRIFFIN'S home, Defendants knew that CANDLER GRIFFIN was charged with and plead guilty to a violent felony.

62.     The Defendants had knowledge of the above-referenced conduct yet breached their mandatory duty to provide accurate information to the dependency court.

63.     Welfare and Institutions Code Section 16501(f) imposes a mandatory duty on Defendants to determine the necessity for providing initial intake services and crisis intervention to maintain the child safely in his home or to protect the safety of the child pursuant to sections 11164 and 11166 of California Penal Code. Section 16501(f) states, "County welfare departments shall respond to any report of imminent danger of a child immediately all other reports within 10 days." Section 16504, subsection (a), of the California Welfare and Institutions Code mandates an in-person response in accord with the Department of Social Services Regulations: "An immediate in-person response shall be made by a county child welfare services department social worker in emergency situations in accordance with the regulations of the department." Decedent was in imminent danger and there was no immediate response from social workers.

64.     Pursuant to its regulatory authority, the California Department of Social Services promulgated extensive regulations that remove nearly all social worker discretion in whether and how to respond to reports of child abuse.

   a) **Required Response.** Regulation 31-101.1 requires the county to respond to all referrals for service which allege that a child is endangered by abuse, neglect, or exploitation.

   b) **Social Worker Qualifications.** Regulation 31-101.2 mandates that the social worker responding to a referral "shall be skilled in emergency response."

   c) **Emergency Response Protocol or In-Person Investigation.** Regulation 31-101.3 requires the responding social worker to complete an "Emergency Response

14

**COMPLAINT**

Protocol", as described in Section 31-105, conduct an in-person investigation within 10 calendar days from the date the referral was received, as described in Section 31-120.

d) **Deadline to Determine Services Post-Investigation.** Regulation 31-101.5 requires that, within 30 calendar days of the initial removal of the child or the in-person investigation, or by the date of the dispositional hearing, whichever comes first, the social worker shall make a determination of whether child welfare services are necessary and, in the case of non-Indian children, either: (1) complete a case plan and begin implementation of the case plan in accordance with the time frames and schedules specified in Chapter 31-200; or (2) close the referral/case, as appropriate.

e) **Emergency Response Protocol.** Regulation 31-105 defines explicit information that the social worker must gather to complete the Emergency Response Protocol. Furthermore, the social worker shall record all available and appropriate information on the Emergency Response Protocol form SOC 423 (10/92), or an approved substitute. Pursuant to Regulation 31-105, social workers must gather information, including information regarding the reporter, each adult and minor in the child's household, the alleged perpetrator, records reviewed, collateral contacts, the alleged incident, including specified risk factors (severity, frequency, location and description of injury, history of abuse/neglect/exploitation, age, vulnerability, behavior, interaction with caretakers/siblings/peers, caretaker characteristics, family factors), and information necessary to determine whether to conduct an in-person investigation is necessary shall include, but not be limited to, consideration of the following factors:

   1. The ability to locate the child alleged to be abused and/or the family.

   2. The existence of an open case and the problem described in the allegation is being adequately addressed.

   3. The allegation meets one or more of the definitions of child abuse,

exploitation or neglect contained in Sections 31-002(c)(7), 31-002(e)(9), or 31-002(n)(1).

4. The alleged perpetrator is a caretaker of the child or the caretaker was negligent in allowing, or unable or unwilling to prevent, the alleged perpetrator access to the child.

5. The allegation includes specific acts and/or behavioral indicators which are suggestive of abuse, neglect, or exploitation.

6. There is additional information from collateral contacts or records review which invalidates the reported allegation.

7. There are previously investigated unsubstantiated or unfounded reports from the same reporter with no new allegations or risk factors.

f) **Mandatory Immediate In-Person Investigation.** Regulation 31-115.1 requires a social worker to conduct an "immediate" in person investigation when either: (1) "The emergency response protocol indicates the existence of a situation in which imminent danger to a child, such as physical pain, injury, disability, severe emotional harm or death, is likely." (2) "The law enforcement agency making the referral states that the child is at immediate risk of abuse, neglect or exploitation. (3) "The social worker determines that the child referred by a law enforcement agency is in immediate risk of abuse, neglect or exploitation."

g) **Mandatory 10-Day In-Person Investigation.** Regulation 31-120 requires a social worker to conduct an in-person investigation of the allegation of abuse, neglect or exploitation within 10 calendar days after receipt of a referral when: (1) "The emergency response protocol indicates that an in-person investigation is appropriate and the social worker has determined that an in-person immediate investigation is not appropriate." (2) "The law enforcement agency making the referral does not state that the child is at immediate risk of abuse, neglect or exploitation and the social worker determines that an in-person investigation is not appropriate."

h) **Investigation Mandatory Determination**. Regulation 31-125 requires a social worker investigating a referral to "determine the potential for or the existence of any condition(s) which places the child or other child in the family or household, at risk and in need of services and which would cause the child to be a person..." abused or neglected under California Welfare and Institutions Code section 300, subsection (a) through (j).

i) **Investigation Protocol Requirements.** Regulation 31-125.2 requires the social worker to have in-person contact with all of the children alleged to be abused, neglected or exploited, and at least one adult who has information regarding the allegations. Where the foregoing does not lead to determination that the referral is "unfounded", the social worker must: (1) conduct an in-person investigation with all children present and parents with access to the children; and (2) make necessary collateral contacts with each person having knowledge of the condition of each child that is the subject of the allegation.

j) **Reports to Law Enforcement/District Attorney.** California Penal Code section 11166 requires a welfare department to immediately, or as soon as practicably possible, to report by telephone, fax, or electronic transmission to law enforcement and the district attorney's office every known or suspected instance of child abuse or neglect. Where the initial report was made by telephone, the welfare department must fax or electronically transmit, within 36 hours, a written report to law enforcement and the district attorney's office.

65.     As set forth above, Defendants violated their mandatory duties to: (1) respond to all referrals for service which allege that a child is endangered by abuse, neglect, or exploitation as set forth above; (2) ensure that the social worker responding to a referral has the requisite skill in emergency response; (3) complete an emergency response protocol or an in-person investigation in response to each referral as set forth above; (4) follow the emergency response protocol and obtain all information delineated in Regulation 31-105 set forth above; (5) consider all criterion delineated in Regulation 31-105 for the evaluation of whether an in-person investigation is

17

**COMPLAINT**

required; (6) conduct an in-person investigation to make a determination as required under Regulation 31-125; (7) complete an in-person investigation according to the protocol required under Regulation 31-125; (8) failure to timely make a determination of whether a child welfare services are required; and (9) failure to report to law enforcement and the district attorney's office. Defendants' violations of their mandatory duties was the proximate cause of Decedent CMW's death, resulting in Plaintiff's injuries and damages as alleged above.

66.     Defendants owed a duty to exercise reasonable care to avoid injuring Decedent CMW or otherwise protect Decedent from the harm caused by CANDLER GRIFFIN.

67.     Defendants negligently, recklessly, willfully, intentionally, wantonly, and deliberately failed to exercise reasonable care to protect Decedent. Defendants further negligently failed to identify the abuse; document; report to superiors; properly assess the level of risk to Decedent; conduct an investigation pursuant to regulations set forth above; implement and monitor compliance with policies and procedures regarding the foregoing; and/or taking action to prevent the abuse and/or neglect of Decedent, as described above.

68.     As "mandated reporters" under Penal Code sections 11165.7(a)(15) and (18), Defendants failed to report suspected child abuse and/or neglect of Decedent to appropriate authorities and failed to make initial reports or follow up reports within 36 hours of receiving said reports of abuse and/or neglect in the CANDLER GRIFFIN home as mandated by Penal Code sections 11165.9 and 11166(a).

69.     Defendant negligently delivered child protective services of Decedent by failing to properly conduct an assessment and develop a case plan as mandated by DSS Regulations 31-201, 31-205, 31-206, and/or Welfare and Institutions Code section 16501.1(d).

70.     Defendants failed to conduct a basic evaluation of risks to determine whether an emergency situation existed as mandated by Welfare and Institutions Code section 16504 and/or DSS Regulations at 31-101, 31-105, 31-110, 31-115, 31-120, and/or 31-128.

71.     Defendants failed to control the conduct of CANDLER GRIFFIN, and/or otherwise protect minor Decedent as mandated by Welfare and Institutions Code sections 16504(a),

16501(d), and/or 16501(f). The assigned social workers ignored red flags that showed CANDLER GRIFFIN was not capable of protecting or caring for Decedent.

72.     Additionally, under California Evidence Code section 669, the negligence of Defendants, and their employees or agents, may be presumed for the reason that:

    a)  Defendants, and each of them, violated the child protection statutes, placing Decedent in harm's way pursuant to California Penal Code section 273(a) (Endangerment) and failing to investigate reports of child abuse;

    b)  The violations proximately caused injury to Decedent;

    c)  The injuries to Decedent were occurrences of the nature which the statutes are designed to prevent; and

    d)  Decedent was a member of the class of persons for whose protection these statutes were adopted.

73.     Defendant CANDLER GRIFFIN acted negligently and with willful disregard towards Plaintiffs. CANDLER GRIFFIN had a duty of care that it breached which was the actual and proximate cause of Plaintiffs' injuries.

74.     In doing the acts and omissions alleged herein, CANDLER GRIFIN engaged in a course of conduct that was grossly negligent, extreme and outrageous.  CANDLER GRIFFIN acted in said course of conduct with wanton and reckless disregard of the consequences or harm that was likely to result to CMW.

## THIRD CAUSE OF ACTION

### By Plaintiff, THE ESTATE OF CMW

### (Negligent Hiring, Training, and Supervision)

### Against Defendant COUNTY OF LOS ANGELES

75.     Plaintiffs reallege and reincorporate each and every allegation and averment contained herein above as though fully set forth and brought in this cause of action.

76.     As an agency working with children, Defendant DCFS was entrusted with the care of minor children within its system. At no time during the periods of time alleged did Defendants

have in place a system or procedure to reasonably investigate, supervise, and monitor its employees prior to hiring them and once hired.

77.    At all times mentioned herein, Defendants were under a duty to supervise the conduct of its social workers and employees to enforce those regulations necessary for the proper enforcement of the laws of the State of California and to exercise ordinary care to protect Decedent from abuse as established herein.

78.    Defendants negligently failed to supervise their employees appropriately so as to prevent the type of violations of policy and statutory laws and regulations as alleged herein that led to the injuries sustained by Decedent.

79.    Defendants negligently, recklessly failed to exercise reasonable care to protect Decedent through its negligence in retaining employees that breached their duties to children under the care of DCFS and their failure to supervise their employees. Defendants further negligently failed to supervise its social workers and other employees who in turn failed to identify the neglect and abuse; document; report to superiors; properly assess the level of risk to Decedent; conduct an investigation pursuant to regulations set forth above; implement and monitor compliance with policies and procedures regarding the foregoing; and/or taking action to prevent the abuse and/or neglect of Decedent, as described above.

80.    Defendants negligently and recklessly failed to exercise reasonable care to protect Decedent. Defendants failed to ensure their employees had the requisite skill required, both at the time of hiring and afterwards. As a result, Defendants, their employees, and agents negligently failed to identify the abuse; document; report to superiors; properly assess the level of risk to Decedent; conduct an investigation pursuant to regulations set forth above; implement and monitor compliance with policies and procedures regarding the foregoing; and/or taking action to prevent the abuse and/or neglect of Decedent, as described above.

81.    Defendants' conduct was a breach of their duties to Decedent. These negligent and reckless acts and omissions were the proximate and a legal cause of the damages and injuries sustained by Decedent, and the legal cause of decedent's death as alleged in this complaint. Had Defendants fulfilled their mandated and legal duty of care, Decedent would not have died.

82.     As a result of the above acts and omissions of Defendants, Decedent was neglected and abused, as evidenced by the reports made to DCFS and ultimately the manner of her death.

83.     As a direct and proximate result of Defendants' conduct, as alleged above, Plaintiff has been deprived of the life-long love, companionship, comfort, society, and care of Decedent, and will be deprived for the remainder of his natural life. Plaintiff is claiming wrongful death damages under the Fourteenth Amendment claims, and also under their state law claims for negligence.

84.     As a direct and proximate result of the acts and omissions of Defendants, including its employees or agents, and each of them, as alleged herein, decedent suffered injuries including, but not limited to, physical and mental pain and suffering, physical injuries, and past and future medical care and treatment, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of the Court.

## FOURTH CAUSE OF ACTION

### By Plaintiff, THE ESTATE OF CMW

### (Violation of 42 U.S.C. § 1983)

### Against Defendant COUNTY OF LOS ANGELES,

### WENDY GARCIA AND BILL THOMAS

85.     Plaintiffs reallege and reincorporate each and every allegation and averment contained herein above as though fully set forth and brought in this cause of action.

86.     There have been countless children who have died while under the care of the County through its agency the Department of Children Family Services ("DCFS"), several of which have been high profile cases regularly covered by the media.

87.     There are systemic deficiencies in the policies, procedures, customs, and practices of DCFS that violated the 14th Amendment rights guaranteed to children who are under their care and supervision.

88.     In particular, the Lancaster/Palmdale DCFS office has a custom and practice of egregious behavior that has led to the murders of several children. In 2013, there was Gabriel Fernandez who was tortured and murdered by his mother and her boyfriend following countless

red flags of physical and sexual abuse that DCFS social workers knowingly failed to properly respond to, leaving Gabriel in the home with his abusers. Gabriel's mother and boyfriend were convicted of first-degree murder. In addition to the conviction of Gabriel's mother and her boyfriend, three DCFS employees are being criminally prosecuted stemming from Gabriel's death. In 2018, Anthony Avalos was also tortured and murdered by his mother and her boyfriend following 13 referrals to DCFS and countless red flags. Most recently, on July 5, 2019, 4-year-old Noah Cuatro died after multiple red flags of physical and sexual abuse that had been substantiated by DCFS. A social worker even filed a petition to remove Noah from his parents' home, which was granted. However, following the judge's granting of the petition of removal, no DCFS employee actually removed the child from the home for months, leaving him in what was known to be a dangerous home to die.

89.     The systemic deficiencies have been documented throughout the years by County and have continued to the present with no substantial action by County and/or DCFS to correct known problems within the agency that are causing significant injury and death to children under their care.

90.     The deficiencies of DCFS and County have been recorded in the following documents: 1) Report from the County of Los Angeles Chief Executive entitled "April 28, 2009, Board Item 29-B: Quality and Availability of Services for At-Risk Children and Families and Training Standards for Children Social Workers"; 2) the April 16, 2021 Report of the Los Angeles County Board of Supervisors Children's Special Investigation Unit Report entitled "Report Regarding DCFS Recurring Systemic Issues"; 3) the April 18, 2014 Final Report of the Los Angeles County Blue Ribbon Commission on Child Protection entitled "The Road to Safety for Our Children"; and 4) the May 2019 report of the Auditor of the State of California entitled "Los Angeles County Department of Children and Family Services – It has Not Adequately Ensured the Health and Safety of All Children in Its Care". These documents evidence that the deficiencies reported in these documents have existed for a significant amount of time and have been known to policymakers of DCFS and County and have become customs and practices.

County policymakers are aware that these customs and practices are violative of the 14th Amendment rights of children in its care, such as Decedent.

91.     The April 18, 2014 report by the Blue Ribbon Commission on Child Protection was created as a result of the Los Angeles County Board of Supervisors charging the commission with reviewing child protection failures following the death of Gabriel Fernandez. The Commission's report on April 18, 2014 stated, "The Commission unanimously concluded that a State of Emergency exists, which requires a fundamental transformation of the current child protection system." The Commission gave a plethora of recommendations to institute a complete systematic change to child protection services. Despite this, change did not come to the children that found themselves in the system. Furthermore, the report also states, "Social workers testified that they were unable to perform essential functions because of overwhelming caseloads and insufficient support, supervision, and training."

92.     Subsequent to the Blue Ribbon Commission Report there have been several other child fatalities, including that of Anthony Avalos and Noah Cuatro. After Anthony's death the 2019 audit listed above was conducted related to the handling of Anthony's case specifically and child protection services deficiencies in Los Angeles County generally. The 43-page audit report found countless systematic failures in how Anthony's case was handled and within DCFS. Among the action needed to work on these systematic failures was the training of social workers in various areas including on how to interview children. DCFS employees have still not been trained on how to effectively interview young children. The cover letter to the audit states, "Safety and risk assessments are critical tools....We also found numerous instances in which these assessments were not accurate, including safety assessments that social workers prepared and submitted without actually visiting the child's home." In line with this statement, the audit report concluded the Department did not "have a system in place to hold supervisors accountable for conducting thorough reviews of ongoing case visits."

93.     The report systemic lists systemic deficiencies that include, but are not limited to the following: 1) unreasonable workloads assigned to children social workers that include high caseloads, issues involving the inability to find appropriate placements and burdensome

paperwork and task requirements that negatively impact monitoring and supervision of children; 2) failure to conduct required monthly contact visits in the child's placement; 3) failure to monitor and audit the child social workers' notations in the Service Log documents so that it could be determined when child social workers were not in fact conducting visits but were falsely documenting visits; 4) continued failure to address with policies and procedures the problem of missed contact visits; 5) failure to adequately investigate child abuse allegations; 6) failure to adequately investigate neglect allegations; 7) failure to promptly perform assessments; 8) failure to cross report allegations of neglect and abuse to law enforcement; and 9) unreasonable work loads of supervisors of social workers, particularly in the Palmdale/Lancaster offices.

94.     These reports reflect a chaotic agency structure that fails in its core function of protecting children in its care.

95.     The wrongful actions of Defendants County and DOES 1 through 50, inclusive, are directly attributable to the above-mentioned customs and practices that are violative of the 14th Amendment rights of Decedent and Plaintiffs. Defendants, since at least 2009, have followed policies that are deficient and unconstitutional. For at least 12 years, Defendants were on actual notice that these particular omissions or acts were in violation of the constitutional rights of Decedent and consequently Plaintiff in that they did not reflect reasonable safety and minimally adequate care and treatment of such children as decedent. The reports listed above evidence continuous acts and omissions that are known and through failed corrective measures are ratified by Defendants.

96.     These acts and omissions were followed by Defendants and constituted municipal customs and practices which caused injury and damages to decedent and consequently Plaintiff.

97.     As a direct and proximate result of Defendants' conduct, as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, society, and care of Decedent, and will be deprived for the remainder of their natural life. Plaintiff WATKINS is claiming wrongful death damages under the Fourteenth Amendment claims, and also under their state law claims for negligence.

24

**COMPLAINT**

98.     As a direct and proximate result of the acts and omissions of Defendants, including its employees or agents, and each of them, as alleged herein, decedent suffered injuries including, but not limited to, physical and mental pain and suffering, physical injuries, and past and future medical care and treatment, in an amount not yet ascertained, but which exceeds the minimum jurisdictional limits of the Court.

### FIFTH CAUSE OF ACTION

**By Plaintiffs SYDNEY WATKINS and LISA LEWIS**

**(Pursuant to 42 U.S.C. § 1983 for Violations of Civil Rights Under the Fourteenth Amendment to the United States Constitution)**

**Against Defendants COUNTY OF LOS ANGELES, WENDY GARCIA AND BILL THOMAS**

99.     Plaintiffs reallege and reincorporate each and every allegation and averment contained herein above as though fully set forth and brought in this cause of action.

100.    At all times mentioned herein, Plaintiffs SYDNEY WATKINS and LISA LEWIS had a right under the Fourteenth Amendment to the United States Constitution, to a familial relationship with CMW as well as the related right to be free from unwarranted State interference with the same.

101.    Defendants and each of them acted under color of law, and unlawfully separated CMW from his family and placed in him a position of peril.  The Defendants acted in reckless and callous disregard for the constitutional rights of Plaintiffs under the Fourteenth Amendment.

102.    Plaintiffs seek general and special damages according to proof including damages for the deprivation of Plaintiffs' constitutionally protected interest in the familial relationship, love, care, and companionship of CMW.

103.    The wrongful conduct of Defendants, and each of them, is a typical example of a larger policy, pattern, practice, custom and usage of the Defendants to deprive certain segments of the populace of their inalienable rights by committing, condoning, approving, overlooking and failing to prevent abuse against children removed from their family and placed in dangerous conditions.

104.    There are systemic deficiencies in the policies, procedures, customs, and practices of DCFS that violated the 14th Amendment rights guaranteed to children who are under their care and supervision.

105.    In particular, the Lancaster/Palmdale DCFS office has a custom and practice of egregious behavior that has led to the murders of several children. In 2013, there was Gabriel Fernandez who was tortured and murdered by his mother and her boyfriend following countless red flags of physical and sexual abuse that DCFS social workers knowingly failed to properly respond to, leaving Gabriel in the home with his abusers. Gabriel's mother and boyfriend were convicted of first-degree murder. In addition to the conviction of Gabriel's mother and her boyfriend, three DCFS employees are being criminally prosecuted stemming from Gabriel's death. In 2018, Anthony Avalos was also tortured and murdered by his mother and her boyfriend following 13 referrals to DCFS and countless red flags. Most recently, on July 5, 2019, 4-year-old Noah Cuatro died after multiple red flags of physical and sexual abuse that had been substantiated by DCFS. A social worker even filed a petition to remove Noah from his parents' home, which was granted. However, following the judge's granting of the petition of removal, no DCFS employee actually removed the child from the home for months, leaving him in what was known to be a dangerous home to die.

106.    The systemic deficiencies have been documented throughout the years by County and have continued to the present with no substantial action by County and/or DCFS to correct known problems within the agency that are causing significant injury and death to children under their care.

107.    The deficiencies of DCFS and County have been recorded in the following documents: 1) Report from the County of Los Angeles Chief Executive entitled "April 28, 2009, Board Item 29-B: Quality and Availability of Services for At-Risk Children and Families and Training Standards for Children Social Workers"; 2) the April 16, 2021 Report of the Los Angeles County Board of Supervisors Children's Special Investigation Unit Report entitled "Report Regarding DCFS Recurring Systemic Issues"; 3) the April 18, 2014 Final Report of the Los Angeles County Blue Ribbon Commission on Child Protection entitled "The Road to Safety

for Our Children"; and 4) the May 2019 report of the Auditor of the State of California entitled "Los Angeles County Department of Children and Family Services – It has Not Adequately Ensured the Health and Safety of All Children in Its Care". These documents evidence that the deficiencies reported in these documents have existed for a significant amount of time and have been known to policymakers of DCFS and County and have become customs and practices. County policymakers are aware that these customs and practices are violative of the 14th Amendment rights of children in its care, such as Decedent.

108.   The April 18, 2014 report by the Blue Ribbon Commission on Child Protection was created as a result of the Los Angeles County Board of Supervisors charging the commission with reviewing child protection failures following the death of Gabriel Fernandez. The Commission's report on April 18, 2014 stated, "The Commission unanimously concluded that a State of Emergency exists, which requires a fundamental transformation of the current child protection system." The Commission gave a plethora of recommendations to institute a complete systematic change to child protection services. Despite this, change did not come to the children that found themselves in the system. Furthermore, the report also states, "Social workers testified that they were unable to perform essential functions because of overwhelming caseloads and insufficient support, supervision, and training."

109.   Subsequent to the Blue Ribbon Commission Report there have been several other child fatalities, including that of Anthony Avalos and Noah Cuatro. After Anthony's death the 2019 audit listed above was conducted related to the handling of Anthony's case specifically and child protection services deficiencies in Los Angeles County generally. The 43-page audit report found countless systematic failures in how Anthony's case was handled and within DCFS. Among the action needed to work on these systematic failures was the training of social workers in various areas including on how to interview children. DCFS employees have still not been trained on how to effectively interview young children. The cover letter to the audit states, "Safety and risk assessments are critical tools….We also found numerous instances in which these assessments were not accurate, including safety assessments that social workers prepared and submitted without actually visiting the child's home." In line with this statement, the audit

report concluded the Department did not "have a system in place to hold supervisors accountable for conducting thorough reviews of ongoing case visits."

110.    The report systemic lists systemic deficiencies that include, but are not limited to the following: 1) unreasonable workloads assigned to children social workers that include high caseloads, issues involving the inability to find appropriate placements and burdensome paperwork and task requirements that negatively impact monitoring and supervision of children; 2) failure to conduct required monthly contact visits in the child's placement; 3) failure to monitor and audit the child social workers' notations in the Service Log documents so that it could be determined when child social workers were not in fact conducting visits but were falsely documenting visits; 4) continued failure to address with policies and procedures the problem of missed contact visits; 5) failure to adequately investigate child abuse allegations; 6) failure to adequately investigate neglect allegations; 7) failure to promptly perform assessments; 8) failure to cross report allegations of neglect and abuse to law enforcement; and 9) unreasonable work loads of supervisors of social workers, particularly in the Palmdale/Lancaster offices.

111.    These reports reflect a chaotic agency structure that fails in its core function of protecting children in its care.

112.    The wrongful actions of Defendants County and DOES 1 through 50, inclusive, are directly attributable to the above-mentioned customs and practices that are violative of the 14th Amendment rights of Decedent and Plaintiffs. Defendants, since at least 2009, have followed policies that are deficient and unconstitutional. For at least 12 years, Defendants were on actual notice that these particular omissions or acts were in violation of the constitutional rights of Decedent and consequently Plaintiff in that they did not reflect reasonable safety and minimally adequate care and treatment of such children as decedent. The reports listed above evidence continuous acts and omissions that are known and through failed corrective measures are ratified by Defendants.

113.    These acts and omissions were followed by Defendants and constituted municipal customs and practices which caused injury and damages to decedent and consequently Plaintiff.

114.     As a direct and proximate result of Defendants' conduct, as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, society, and care of Decedent, and will be deprived for the remainder of their natural life. Plaintiff WATKINS is claiming wrongful death damages under the Fourteenth Amendment claims, and also under their state law claims for negligence.

115.     Plaintiffs are informed and believe, and thereupon aver, that the wrongful acts of employee Defendants, when viewed in the context of the enterprise of DCFS are broadly incidental to that enterprise, and are not so unusual or startling that it would seem unfair to include any losses suffered as a result of said acts among other costs of employer/municipality Defendant's business.

116.     Defendants, and each of them, acted at all times herein knowing that the established customs, policies, patterns, and practices of the COUNTY OF LOS ANGELES DEPARTMENT OF CHILD PROTECTIVE SERVICES allow a cover-up and the continued violation of the Fourteenth Amendment to the Constitution of the United States.

117.     Plaintiffs are informed and believe and thereon aver that the Defendants, and each of them, knew or in the exercise of reasonable care should have known of a history, propensity and pattern, prior to and after the time of CMW's death, for social workers to fail to properly investigate, provide oversight and otherwise provide for the safety and protection of the children in their care.

118.     Prior to the circumstances leading to and following CMW'S death, COLA DCFS was the subject of prior complaints of allegations of similar conduct and had been found by federal and state courts to have violated constitutional rights in the course and scope and under color of law in their capacities COLA DCFS employees.

119.     Notwithstanding this information and the history of the COLA DCFS, Defendants and each of them continued to disregard the health and safety of the children placed in their care.

120.     Defendants' disregard of this knowledge or failure to adequately investigate and discover this policy, pattern, practice, custom and usage of constitutional violations or the

existence of facts that create the potential of unconstitutional acts, violated their duty to supervise, train and instruct their subordinates to prevent similar acts to other persons.

121.    Defendants failure to take steps to train, supervise, investigate or instruct their employees, including GARCIA and THOMAS, resulted in the untimely death of CMW thereby depriving Plaintiffs of a familial relationship with the decedent CMW.

122.    The aforementioned acts of Defendants COLA, THOMAS, GARCIA, and each of them were willful, wanton, malicious and oppressive and thereby justify the awarding of exemplary and punitive damages.  Further, Plaintiffs are entitled to, and do seek, attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, plaintiff prays for judgment against defendants and each of them as follows:

1.    For burial and funeral related expenses according to proof at trial;

2.    For general damages in an amount to be determined according to proof at trial;

3.    For medical and related expenses according to proof at trial;

4.    For costs of suit incurred herein;

5.    For punitive damages against WENDY GARCIA, BILL THOMAS, LASHAUNA CANDLER GRIFFIN and individual DOE DEFENDANTS 1-25 in an amount to be determined according to proof at trial;

6.    For attorneys' fees, investigation fees, and expert witness fees incurred herein; and·

7.    For such other and further relief as the court may deem just and proper.


DATED: December 22, 2023          **LAW OFFICE OF MICHAEL J. CURLS**

By:/s/ Nichelle D. Jones
Nichelle D. Jones, Attorneys for
Plaintiffs THE ESTATE OF CMW, *et al.*

**COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury through their counsel of record as to all issues so triable.

DATED: December 22, 2023          **LAW OFFICE OF MICHAEL J. CURLS**


By:/s/ Nichelle D. Jones
Nichelle D. Jones, Attorneys for
Plaintiffs ESTATE OF CMW, *et al.*

31

**COMPLAINT**